**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

**C.G., individually and as parent, guardian,
and next friend of K.P., a minor,**

        **Plaintiff,**

**v.**                                            **Civ. Action No. 3:23-cv-00373**

**CABELL COUNTY BOARD OF
EDUCATION, KIM CONWAY, DIANA
FRANCE, KAYLA BYRD McDOWELL, and
BROOKE HECK,**

        **Defendants.**

## COMPLAINT

### PRELIMINARY STATEMENT

C.G. trusted Cabell County's public school system with her child, K.P. She was led to believe the employees of the Explorer Academy were supporting K.P. through his disability associated behaviors.

C.G. was devastated to learn that her trust was misplaced. Instead of caring for and respecting a K.P. nine-year-old child with autism, Cabell County Board of Education's employees restrained, ridiculed, threatened, and shoved him to the ground. They told K.P. he was a "baby" and a "bad kid." They made K.P. believe he was worthless.

On May 11, 2021, Kim Conway falsely accused K.P. of assaulting her. But classroom videos exposed her lies. K.P. didn't assault Kim Conway. Kim Conway repeatedly shoved K.P. to the ground and screamed at him, threatening to take everything he and his mommy had.

With sorrow for the cruel treatment her child endured, Plaintiff C.G., as the parent, natural guardian, and next friend of K.P., alleges the following against Defendant Cabell County Board of Education, Kim Conway, Diana France, Kayla Byrd McDowell, and Brooke Heck:

**PARTIES**

1.      Plaintiff C.G. the mother of minor child K.P. and is a citizen and resident of Cabell County, West Virginia.

2.      K.P. an eleven-year-old minor child who resides with C.G. in Cabell County, West Virginia.

3.      Defendant Cabell County Board of Education (hereinafter referred to as "Defendant CCBOE") is a government agency that governs the public schools in Cabell County, West Virginia.

4.      Defendant CCBOE controls and maintains the Explorer Academy.

5.      At all times relevant herein, Defendant Kim Conway was an employee or agent of Defendant CCBOE.

6.      Upon information and belief, Defendant Kim Conway is a citizen and resident of Chattahoochee County, Georgia.

7.      Defendant Diana France is and/or was an employee and/or agent of Defendant CCBOE.

8.      Upon information and belief, Defendant Diana France is a citizen and resident of Cabell County, West Virginia.

9.      Defendant Kayla Byrd McDowell is and/or was an employee and/or agent of Defendant CCBOE.

10.      Upon information and belief, Defendant Kayla Byrd McDowell is a citizen and resident of Lawrence County, Ohio.

11.      Defendant Brooke Heck is and/or was an employee and/or agent of Defendant CCBOE.

12.     Upon information and belief, Defendant Brooke Heck is a citizen and resident of Cabell County, West Virginia

## JURISDICTION AND VENUE

13.     Inasmuch as Plaintiff asserts that the defendants have violated federal law, this Court has original jurisdiction pursuant to 28 U.S.C. § 1131.

14.     This Court has supplemental jurisdiction over Plaintiff's state law claims, because they are so related to federal claims that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367.

15.     Venue is appropriate in this Court because Defendants CCBOE, Diana France, and Brooke Heck are residents of this district. 28 U.S.C. § 1391(b)(1).

16.     Venue is also appropriate because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district. 28 U.S.C. § 1391(b)(2).

## FACTS

### K.P. is a minor child with a disability.

17.     K.P. is a minor child with Autism.

18.     K.P. is a disabled individual.

19.     K.P.'s disability substantially limits several major life activities, including caring for himself, learning, and communicating.

20.     K.P. requires assistance in daily activities and when participating in extracurricular and school activities, sports, and eating in restaurants.

21.     Due to his disability, K.P. is unable to engage in prolonged physical activity or spend prolonged time in heat.

22.     Due to his disability, K.P. occasionally presented with difficult behaviors, including: verbal behaviors, throwing objects, hitting, kicking, and turning over objects.

23.     K.P. also has low muscle tone which contributes to his inability to engage certain types of prolonged activity.

24.     K.P. turned nine years old on January 16, 2021

25.     During the spring semester of 2021, K.P. attended the Explorer Academy.

26.     The Explorer Academy is a public elementary school located in Huntington, West Virginia.

27.     The CCBOE and the Explorer Academy were aware of K.P.'s disability.

28.     Indeed, K.P. has had an Individualized Education Plan thought CCBOE, which identifies his disability, since he was in pre-k.

29.     CCBOE and the Explorer Academy represented to K.P.'s mother, C.G., that they were equipped to appropriately supervise K.P. and to appropriately respond to the behaviors that are a manifestation of his disability.

**Once in the care of the Defendants,
K.P. starts engaging in troubling and self-deprecating behavior.**

30.     After he began attending the Explorer Academy, K.P. started engaging in self-deprecating and problematic behaviors.

31.     K.P. started calling himself a "baby" because he sometimes wears a pull-up.

32.     K.P. also started describing himself as a "bad kid."

33.     As time progressed, K.P. began to state that he did not want to go to school and tried to physically resist getting on the school bus.

34.     C.G. became concerned that K.P. was being bullied or criticized at school.

**CCBOE employees regularly punish and restrain K.P.—**
**pinning his nine-year-old body to the ground for extended periods of time.**

35. In March of 2021, Defendant France called C.G. and asked her to come pick up K.P. from school.

36. Defendant France informed C.G. that K.P. was being restrained in the school's "sensory room."

37. When C.G. arrived approximately 15 minutes later, K.P. was still being restrained.

38. Multiple CCBOE employees, including Defendant McDowell and Defendant France, were inappropriately restraining K.P. in the starfish position on the floor.

39. Based on the statements of CCBOE employees, it appeared that K.P. had been forcefully restrained for an extended period of time.

40. Although C.G. was not informed until later, between the months of March and May, the Defendants subjected K.P. to ongoing and continuous improper punishments and restraints.

41. CCBOE and its employees did not notify C.G. of these ongoing and continuous restraints.

42. Defendant Conway informed C.G. that she would frequently punish K.P. by making him write sentences, despite knowing that K.P. has low muscle tone and has a difficult time writing for an extended period of time.

43. These punishments were without pedagogical purpose.

**After physically attacking K.P. and cruelly threatening to "sue [his] mommy,"
Defendant Conway falsely accuses K.P. of attacking her.**

44.     On May 11, 2021, C.G. received a call from Defendant France at the Explorer
Academy to pick up K.P.

45.     C.G. was told by another CCBOE employee, the Explorer Academy's Vice
Principal Mary Beth Svingos, that K.P. had injured a teacher and was being suspended for 10
days.

46.     C.G. demanded to see the video.

47.     Initially, CCBOE's Deputy Superintendent Tim Hardesty agreed that 90 days of
video would be saved for C.G. to view.

48.     C.G. was told that Explorer Academy Principal Ryan McKenzie was working
with CCBOE's tech team to prepare the videos.

49.     C.G. was not permitted to view the any videos until July 2021, and at that time
she was only permitted to view the video of May 11, 2021.

50.     C.G. has never been permitted to view the remaining 89 days of videos CCBOE
told her she could view.

51.     Once C.G. saw the video of May 11, 2021, she learned that her child had not
injured his teacher but rather that K.P.'s teacher, Defendant Kim Conway, had assaulted and
injured him.

52.     The video showed K.P. being repeatedly shoved by Defendant Conway into the
school's "sensory room."

53.     The video further showed that Defendant McDowell was seated outside the
sensory room, where she verbally berated K.P.

54.    Defendant France was similarly seated outside the sensory room, and she could be heard discussing K.P. and his "bad" behavior.

55.    Defendants McDowell and France watched and allowed Defendant Conway's assault and battery of K.P.

56.    When K.P. tried to leave the room, he was physically shoved by Defendant Conway and yelled at by Defendant Conway and Defendant McDowell.

57.    Although Kim Conway claimed that K.P. injured her, the video showed that she repeatedly shoved him, but he never touched her.

58.    Throughout the video, Kim Conway can be heard yelling at the minor disabled child statements to the effect of "I will sue your mommy" and "I will take everything you and your mommy have."

59.    Throughout the video, the classroom aides Diana France and Kayla Byrd McDowell, can be heard chastising  K.P.  and telling him that he is "bad."

60.    Additionally, another CCBOE employee, Brooke Heck, came into the room to tell K.P. he is "bad." Heck told K.P. he had to stay confined in the sensory room.

61.    After this incident, K.P. was removed from Explorer Academy.

62.    Before C.G. waw the footage of May 11th, CCBOE created an incident report regarding the incident, which contained false information about what occurred.

63.    C.G. was informed that the suspension of K.P. was to be removed from his education record.

64.    Indeed, Melody Levisay assured C.G. that any and all reports of "assault" would be removed from the "West Virginia Education Information System" ("WEIS") .

65.     However, CCBOE has refused to provide C.G. a copy of K.P.'s WEIS record to confirm the removal.

66.     Accordingly, upon information and belief, despite seeing video footage that absolved K.P. of harming Defendant Conway, the unjust suspension remains on his record.

67.     Defendant Conway was not punished for her lies, which were caught on camera.

68.     Defendant Conway went on to teach other children at Fort Benning.

**CCBOE employees regularly mistreated and belittled K.P.
without intervention from their supervisors.**

69.     After the events of May 11, 2021, an employee of CCBOE informed C.G. that K.P.'s teachers and aides, including the Individual Defendants, were engaged in a continued course of conduct whereby they regularly restrained K.P. at school.

70.     This employee indicated that K.P. was being restrained multiple times a week.

71.     This employee further indicated that the restraint was not necessary to address K.P.'s behavior.

72.     Based on the footage viewed by C.G., it is believed that in addition to CCBOE employees regularly restraining K.P., they also regularly shoved and yelled at him.

73.     Accordingly, upon information and belief, K.P. was regularly assaulted and mistreated while in the care of the Defendants.

74.     Upon information and belief, Defendant Conway recorded K.P.'s behavioral incidents on her personal cell phone.

75.     Despite seeing the video of Kim Conway, Diana France, Kayla Byrd McDowell, and Brooke Heck mistreating K.P., CCBOE employees and agents met C.G. with coldness and contempt.

76.     Despite knowing that K.P. is a minor child with a disability, CCBOE employees and agents made statements to C.G. suggesting that it is proper for adult employees to shove, yell at, and threaten her child.

77.     CCBOE employees and agents made statements to C.G. suggesting that it is proper for adult employees to falsely accuse her child of assault.

78.     CCBOE's administrators have a duty to supervise the provision of services to students in self-contained classrooms.

79.     West Virginia law requires that school principals "shall view no less than 15 minutes of the video of each self-contained classroom at the school no less than every 90 days."

80.     Because K.P. was subjected to many months of restraint and improper treatment by the Individual Defendants, the administrators at CCBOE knew K.P. was being mistreated but failed to intervene, advise C.G. of the mistreatment, or appropriately supervise the Individual Defendants.

**The Defendants' conduct has caused lasting damage to K.P. and C.G.**

81.     As a result of the Defendants' mistreatment, K.P. suffers from additional maladaptive behaviors.

82.     As a result of the Defendants' mistreatment, K.P. refused to attend school.

83.     As a result of the Defendants' mistreatment, K.P. has required additional medication.

84.     As a result of the Defendants' mistreatment, K.P. began engaging in escalating behaviors with the hopes of being physically restrained.

85.     As a result of the Defendants' mistreatment, K.P. now attempts to elope, or run away, when he is panicked.

86.     As a result of the Defendants' conduct, K.P. and C.G. have suffered severe emotional distress.

87.     After viewing the video of her child being abused, C.G. was unable to sleep for months, as she imagined K.P. being shoved to the ground or screaming and crying in fear every time she closed her eyes.

88.     Since viewing the video of her child being abused, C.G. has had to undergo medical treatment to address the anxiety and turmoil that the abused created.

89.     On numerous occasions, C.G. has had to listen to her child tell her how worthless he was and how he did not want to live.

90.     Because of the Defendants' conduct, C.G. has lost all trust in public school personnel.

91.     C.G. has lost all social connections she had through being a volunteer at the Explorer Academy.

92.     Because the Defendants' conduct had such a negative impact on K.P.'s behavior, C.G. and K.P. were prevented from engaging in social activities.

93.     C.G. no longer lets K.P. be more than an arm's length away, as she cannot trust others and fears how her son may respond.

## COUNT I – NEGLIGENCE
**(All Defendants)**

94.     Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

95.     Defendant CCBOE and its employees, agents, and/or representatives, including each of the Individual Defendants, hold an *in loco parentis* relationship with K.P.

96.     By serving *in loco parentis,* Defendant CCBOE and its employees, agents, and/or representatives hold heightened responsibilities to its students – including students with special needs like K.P.– including a heightened fiduciary duty.

97.     One of the duties owed to K.P. – and all other students within the school district– is the duty to protect those entrusted to their care.

98.     Defendants voluntarily accepted the entrusted care of K.P. As such, Defendants owed K.P. a special, fiduciary duty of care, in addition to a duty of ordinary care, to ensure the safety of K.P. and protect him from harm.

99.     The Individual Defendants breached their duty(ies) of care by, among other things,

     a.   Failing to prevent K.P. from being physically harmed and verbally assaulted;

     b.   Failing to report their colleagues' mistreatment of K.P.; and

     c.   Failing to intervene while K.P. was being mistreated and abused.

100.    Defendant CCBOE breached its duty of care by, among other things,

     a.   Failing to train its staff on proper behavioral techniques;

     b.   Failing to train its staff on the care and treatment of special needs children; and

     c.   Failing to intervene while K.P. was being mistreated and abused.

101.    Violation of a statute can also serve as prima facie evidence of negligence. Syl. Pt. 1, *Anderson v. Moulder*, 394 S.E.2d 61 (W. Va. 1990).

102.    The Defendants' negligence is also evidenced by their violation of West Virginia law, including, but not limited to their failure to report neglect and abuse as required by West Virginia Code § 49–2–803(a).

103. As a direct and proximate result of the actions—or inactions—of CCBOE's employees and agents, K.P. suffered harm for which CCBOE is directly and vicariously liable.

104. Defendants' negligence has directly and proximately caused injury to K.P. and his parent, including actual and threatened bodily harm to K.P., along with great mental and emotional distress, and loss of enjoyment of life.

105. Defendant CCBOE is liable for injury to K.P. caused by the negligent operation of the Explorer Academy, through their employees and agents, as they were acting within the course and scope of their employment.

106. Defendant CCBOE is liable for injuries to K.P. caused by the negligent actions— or inactions—of its employees and agents while acting within the course and scope of their employment.

107. Defendant CCBOE does not have immunity for injury, death, or loss to persons or property caused by the negligent performance of acts by its employees while acting within the scope of employment.  W. Va. Code § 29–12A–4(c)(2).

108. CCBOE does not have immunity for injury, death, or loss to persons or property that is caused by the negligence of its employees and that occurs within or on the grounds of the buildings that are used by CCBOE. W. Va. Code § 29–12A–4(c)(4).

### COUNT II –NEGLIGENT SUPERVISION
#### (Defendant CCBOE)

109. Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

110. As an educational institution for minors, where all of the students are entrusted in the care of Defendant CCBOE's agents, employees, and representatives, Defendant CCBOE

expressly and implicitly represented that its agents, employees, and representatives, including Individual Defendants, were not a risk to K.P. and other children with special needs who were under their supervision, and/or guidance.

111.    Defendant CCBOE failed to supervise, or at a minimum, failed to reasonably supervise the Individual Defendants in their positions of trust and authority as teachers and/or special education aides, allowing them to commit negligent and wrongful acts against K.P.

112.    Despite knowledge of K.P.'s needs, Defendant CCBOE failed to take reasonable and appropriate action for K.P.'s safety.

113.    Defendant CCBOE knew or should have known that the Individual Defendants were negligent in their care of K.P. because it had a duty to supervise its staff.

114.    As a proximate and direct result of Defendant CCBOE's failure to supervise its employees, the Individual Defendants committed the aforementioned negligent acts and caused K.P. and C.G. to suffer injury, including actual and threatened bodily harm to K.P., along with great mental and emotional distress, and loss of enjoyment of life.

115.    CCBOE does not have immunity for injury, death, or loss to persons or property that is caused by the negligence of its employees and that occurs within or on the grounds of the buildings that are used by CCBOE. W. Va. Code § 29–12A–4(c)(4).

## COUNT III- CIVIL BATTERY
### (Defendant Kim Conway)

116.    Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

117.    Defendant Kim Conway intentionally touched K.P. in a harmful or offensive manner, without his consent or the consent of his parents.

118.     Specifically, on at least one occasion, Kim Conway physically pushed and/or hit K.P.

119.     Upon information and belief, on numerous other occasions, Kim Conway unnecessarily restrained K.P.

120.     K.P. and C.G. suffered damages, including physical harm and emotional distress, as a direct result of Defendant Kim Conway's civil battery.

121.     Defendant Kim Conway acted with malicious purpose, in bad faith, and in a wanton or reckless manner.

## COUNT IV – CIVIL ASSAULT
### (Defendant Kim Conway)

122.     Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

123.     Defendant Kim Conway intentionally attempted or threatened to inflict injury on K.P. when she attempted to and/or did shove, hit, or restrain him.

124.     Defendant Kim Conway had an apparent ability to cause the harm.

125.     Defendant Kim Conway's misconduct caused and created a reasonable apprehension of bodily harm or offensive contact in K.P.

126.     K.P. and C.G. suffered damages, including physical harm and emotional distress, as a result of Defendant Kim Conway's civil assault.

127.     Defendant Kim Conway acted with malicious purpose, in bad faith, and in a wanton or reckless manner.

## COUNT V- CIVIL BATTERY
### (Defendants Diana France and Kayla Byrd McDowell)

128.    Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

129.    Defendant France and Defendant McDowell intentionally touched K.P. in a harmful or offensive manner, without his consent or the consent of his parents.

130.    Specifically, on multiple occasions Defendant France and Defendant McDowell unnecessarily restrained K.P.

131.    When restraining K.P., Defendant France and Defendant McDowell unnecessarily forced K.P.'s body to the ground and held him down for long periods of time.

132.    K.P. and C.G. suffered damages including, physical harm and emotional distress, as a direct result of Defendant France and Defendant McDowell's civil battery.

133.    Defendant France and Defendant McDowell acted with malicious purpose, in bad faith, and in a wanton or reckless manner.

## COUNT VI – CIVIL ASSAULT
### (Defendant Diana France and Kayla Byrd McDowell)

134.    Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

135.    Defendant France and Defendant McDowell intentionally attempted or threated to inflict injury on K.P. when they attempted to and/or did him.

136.    Defendant France and Defendant McDowell had an apparent ability to cause the harm.

137.    Defendant France and Defendant McDowell's misconduct caused and created a reasonable apprehension of bodily harm or offensive contact in K.P.

138.    K.P. and C.G. suffered damages, including physical harm and emotional distress, as a result of Defendant France and Defendant McDowell's civil assault.

139.    Defendant France and Defendant McDowell acted with malicious purpose, in bad faith, and in a wanton or reckless manner.

## COUNT VII– DEFAMATION
### (Defendant Kim Conway)

140.    Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

141.    "In West Virginia, the essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 706, 320 S.E.2d 70, 77 (1983).

142.    Defendant Kim Conway defamed K.P. when she told other CCBOE employees that K.P. had assaulted and/or injured her.

143.    This was false and defamatory.

144.    Defendant Conway intentionally published this statement to non-privileged third parties.

145.    Defendant Conway knew the statement was false when she published it to others.

146.    K.P. suffered injury as a result of this defamation, including reputational and emotional harm.

147.    Defendant Kim Conway acted with malicious purpose, in bad faith, and in a wanton or reckless manner.

16

## COUNT VIII– INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Individual Defendants)**

148.    Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

149.    The Individual Defendants' intentional actions, as alleged herein, were of such an atrocious, extreme, and outrageous nature as to exceed all bounds of decency and to shock the conscience.

150.    The Individual Defendants acted with the intent to inflict emotional distress or acted recklessly when they each were substantially certain emotional distress would result from their conduct.

151.    As a direct and proximate result of the Individual Defendants' actions Plaintiff and K.P. have suffered emotional distress.

152.    The emotional distress suffered by the C.G. and K.P. is so severe that no reasonable person would or could be expected to endure it.

## COUNT IX – VIOLATION OF 42 U.S.C. § 1983
**(Individual Defendants)**

153.    Plaintiff re-alleges and incorporates by reference each and every allegation contained about as though fully set forth and brought in this cause of action.

154.    The actions of the Defendants violated K.P.'s constitutional rights, as guaranteed under the Fourteenth Amendment to the United States Constitution.

155.    Specifically, the Individual Defendants violated K.P.'s clearly established right to freedom from undue restraint under the Fourteenth Amendment. *See Youngberg v. Romeo*, 457 U.S. 307, 316 (1982) ("Liberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").

156.    The Individual Defendants are state actors acting under color of state law.

157.    As described herein, the Individual Defendants unnecessarily restrained K.P. for long periods of time without pedagogical purpose or need.

158.    The continued restraint of K.P. was done with malice and callous and deliberate indifference toward the rights of K.P.

159.    "Where the use of a restraint is 'so inspired by malice … that it amount[s] to a brutal and inhumane *abuse of official power* literally shocking to the conscience,' we cannot but find that it violates an individual substantive due process rights." *H.H. ex rel. H.F. v. Moffett*, 334 F. App'x 306, 313–14 (4th Cir. 2009) (quoting *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980) (emphasis in original)).

160.    As a direct result of the Defendants' misconduct and clearly established constitutional violations, C.G. and K.P. suffered damages.

## COUNT X- DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DIABILITIES ACT – Intentional Discrimination
### (Defendant CCBOE)

161.    Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

162.    Title II of the Americans with Disabilities Act ("ADA") prohibits public entities, including public schools, from discriminating against students on the basis of their disabilities.

163.    To state a claim under the ADA a plaintiff "must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her

disability." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

164.    K.P. is a "qualified individual with a disability" under the ADA.  *See* 42 USC § 12131(2).

165.    K.P.'s disability substantially limits several major life activities.

166.    As a minor child living in Cabell County, he is otherwise qualified to receive the benefits of Defendant CCBOE's services, programs, and activities.

167.    K.P. was discriminated against because of his disability.

168.    But for his disability, the Defendants would not have harmed, injured, threatened, or belittled K.P.

169.    As a result of the Defendants' actions, K.P. was denied advantages and privileges of CCBOE's place of public accommodation.

170.    Students without disabilities are not regularly physically restrained, injured, threatened, or belittled, even when they "misbehave" at school.

171.    As a result of this discrimination, C.G. and K.P. suffered damages.

## COUNT XI - VIOLATION OF THE REHABILITATION ACT
### (Defendant CCBOE)

172.    Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

173.    Section 504 of the Rehabilitation Act prohibits discrimination against qualified individuals with disabilities.

174.    Defendant CCBOE is a recipient of federal financial assistance, and therefore is subject to the provisions of Section 504.

175.    K.P.  is an "otherwise qualified individual with a disability" within the meaning of Section 504. 29 U.S.C. §§ 794, 705(20).

176.    K.P.'s disability substantially limits one or more major life activities.

177.    As a minor child living in Cabell County, he is qualified to participate in CCBOE's educational programs, activities, and services.

178.    K.P. was discriminated against because of his disability.

179.    But for his disability, the Defendants would not have harmed, injured, threatened, or belittled K.P.

180.    As a result of the Defendant's actions, K.P. was denied advantages and privileges of CCBOE's place of public accommodation.

181.    Students without disabilities are not regularly physically restrained, injured, threatened, or belittled, even when they "misbehave" at school.

182.    As a result of this discrimination, C.G. and K.P. suffered damages.

## COUNT XII – LOSS OF FILIAL CONSORTIUM
### (All Defendants)

183.    Plaintiff re-alleges Sand incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

184.    C.G. has suffered the loss of filial consortium, services, and society of her son, K.P., as a direct and proximate result of the acts and omissions of the Defendants as set forth herein.

185.    These Defendants' acts and omissions have also proximately caused Plaintiff C.G. to suffer extreme emotional distress.

186.    The Defendants' conduct has caused a devastating disruption of the overall function of K.P. and C.G.'s home.

187.    These damages are ongoing and are expected to continue into the future.

****

WHEREFORE, C.G., as the parent, guardian, and next friend of minor, K.P. demands judgment against the Defendant Cabell County Board of Education, Kim Conway, Diana France, Kayla Byrd McDowell, and Brooke Heck in an amount to fully and fairly compensate the C.G. and K.P. for damages, including court costs, attorney fees, economic damages, and non-economic damages, and any other relief that this Court deems just under the circumstances.

C.G. further demands punitive damages, as Defendant Cabell County Board of Education, Kim Conway, Diana France, Kayla Byrd McDowell, and Brooke Heck acted with actual malice toward K.P. or with a conscious, reckless, and outrageous indifference to the rights, health, safety, and welfare of K.P. and his parent.

**The Plaintiff demands a trial by jury.**


Dated: May 5, 2023                          **C.G., individually and as parent,
                                            guardian, and next friend of K.P., a
                                            minor**

                                            By Counsel

                                            /s/Casey E. Waldeck
                                            Ryan M. Donovan (WVSB # 11660)
                                            Casey E. Waldeck (WVSB # 14001)
                                            HISSAM FORMAN DONOVAN RITCHIE PLLC
                                            P.O. Box 3983
                                            Charleston, WV 25339
                                            681-265-3802 *office*
                                            304-982-8056 *fax*
                                            rdonovan@hfdrlaw.com
                                            cwaldeck@hfdrlaw.com