IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**C.G., individually and as parent, guardian,
and next friend of K.P., a minor**

  **Plaintiff,**

v.               Case No.:  3:23-cv-00373

**CABELL COUNTY BOARD OF EDUCATION,**
et al.,
  **Defendants.**

### MEMORANDUM OPINION AND ORDER

  Pending before the Court are Plaintiff's Motion to Compel, (ECF No. 105); Plaintiff's Motion to File Under Seal, (ECF No. 119); and Defendant Cabell County Board of Education's Motion for Leave to File Surreply in Opposition to Motion to Compel, (ECF No. 142). For the reasons that follow, the Court **DENIES** the motions.

### I. Relevant Facts and Procedural History

#### *A. Complaint*

  Plaintiff C.G. asserts that her autistic son, K.P., was mistreated when he was a nine-year-old student at Explorer Academy during the spring semester of 2021. (ECF No. 1 at 1, 4). Explorer Academy is a school controlled and maintained by Defendant Cabell County Board of Education ("CCBOE"). (*Id*. at 2).

#### *B. Motion to Compel*

  On October 6, 2023, Plaintiff sent the CCBOE an initial set of discovery requests, seeking all videos of K.P.'s classroom and whereabouts for certain dates. (ECF No. 105 at

1

2-3). Upon the CCBOE's objection, Plaintiff agreed to "table" the issue until the CCBOE provided the dates that K.P. was restrained and indicated whether video was available for those days. (ECF Nos. 105 at 3, 105-2 at 1). The CCBOE was supposed to provide a "list and supporting documentation" to Plaintiff regarding when K.P. was restrained. (ECF No. 105 at 3, 105-2 at 1). According to Plaintiff, she never received that list. (ECF No. 105 at 3).

Thus, on February 12, 2024, Plaintiff served her Second Set of Interrogatories and Requests for Production of Documents to the CCBOE. (ECF No. 105-3). Plaintiff asked the CCBOE to produce:

> [A]ll video demonstrating the purported need for, and use of, restraint on or toward K.P. on and from the following date[s]: November 11, 2020; November 12, 2020; February 3, 2021; March 30, 2021; March 31, 2021; April 13, 2021; May 10, 2021; and May 11, 2021.

(ECF No. 105-3 at 3). The CCBOE objected that the request was duplicative of the earlier requests that the CCBOE opposed, and Plaintiff never filed a motion to compel responses to those requests, but she instead agreed to seek video only from May 11, 2021. *See* (ECF No. 105 at 4). After some discussion, the CCBOE filed a supplemental response, stating:

> Supplemental Response: Without waiving the foregoing objections, Defendant has previously produced all video in its possession responsive to this Request. There is no documentation or any other information to suggest that any [Crisis Prevention Institute ("CPI")] restraints were performed on K.P. on November 11, 2020, November 12, 2020, March 30, 2021, April 13, 2021, or May 11, 2021. Video for May 11, 2021 has already been provided as set forth above. No video is available for February 3, 2021 as it is outside of the period of C.G.'s May 17, 2021 request for preservation of videos for ninety days prior to May 11, 2021, and was written over as part of normal video capture procedure.

*See* (ECF No. 105 at 5).

However, Plaintiff was unsatisfied with the supplemental response, and this

discovery dispute ensued. On April 12, 2024, Plaintiff filed the instant motion to compel, asking the Court to order the CCBOE to produce "all video" from March 30, March 31, April 13, and May 10, 2021. (ECF No. 105 at 9). She subsequently narrowed her motion to compel to the dates of March 30 and May 10, 2021 on the basis that the video from March 31 and April 13, 2021 is no longer available. (ECF No. 119-3 at 1). Plaintiff indicates that she would have no other recourse but to seek sanctions for spoliation regarding the video that was not preserved. (*Id.* at 4). As to the videos that Plaintiff moves to compel, Plaintiff argues that on March 31, 2018, "K.P. was restrained – physically pinned to the floor – for more than fifteen minutes." (ECF No. 105 at 8). She states that the incident report indicated that K.P. was hitting, kicking, and yelling at teachers before they restrained him, and he continued to hit and kick when the teachers tried to release the hold, so they kept him restrained until C.G. arrived. (*Id.*). Plaintiff further asserts that, on May 11, 2021, she was informed that K.P. was being suspended for injuring his teacher. (ECF No. 105 at 2). C.G. eventually viewed some footage from that date and reportedly observed that K.P.'s teacher shoved him to the ground, an aide wiped spit on him, and an aide told him that she would "sue [his] mommy." (ECF No. 105 at 6, 8-9).

On that basis, Plaintiff requests video for March 30 and May 10, 2021, which were each of the days preceding the above incidents to determine what events precipitated K.P.'s behavior on March 31 and May 11. (ECF No. 105 at 8-9). Plaintiff concedes that there was no documented use of CPI holds or restraint on March 30 or May 10, but she claims that video from those dates "will demonstrate what touches, pressure, and force the CCBOE and its employees categorize as 'restraints' or 'holds.'" (ECF No. 119-3 at 3).

In response to the motion to compel, the CCBOE argues that it has fully responded to the discovery request at issue, and there is nothing to indicate that video from March

3

30 and May 10 is responsive to the request. (ECF No. 116 at 2-3). Specifically, the CCBOE notes that there is no documentation or other information to suggest that any CPI restraints were performed on K.P. on March 30 or May 10, 2021, nor is there any indication that video from those dates would demonstrate any "purported need for … restraint on or toward K.P." (*Id.* at 4). The CCBOE referenced and attached to its brief a Physical Intervention Incident Report, stating that the March 31, 2021 incident occurred when K.P. was in the front of the classroom drawing when an aide asked him to lower his voice. (ECF No. 116-2 at 8). According to the report, K.P. threw a pencil at the aide, began yelling profanity, and voluntarily went into the sensory room, but he returned to kick, hit, and spit on his teacher and aides. (*Id.* at 7-9). K.P. was directed to return to the sensory room, and he allegedly requested to be put in a CPI hold, so the aides applied a "2-person seated hold position" for five minutes until K.P. was calm and his mother came to get him. (*Id.* at 6, 8, 9).

Thereafter, according to the representations and documents provided by the CCBOE, on May 11, 2021, K.P. was screaming on the playground and began spitting on and wiping saliva on a staff member that approached him. (ECF Nos. 116 at 5, 116-3 at 3). When another employee went over to assist, he ripped out chunks of her hair and punched her in the face. (ECF Nos. 116 at 5, 116-3 at 1-6). A witness stated that "[t]here wasn't an apparent trigger that caused the student's aggressive behavior." (ECF No. 116-3 at 3). After K.P. was escorted inside, his teacher asked him to "go into the back until he calms down," but when she turned around to walk away, K.P. struck her in the upper back/spine using his full force. (ECF Nos. 116 at 5, 116-3 at 7-10).

### C. *Plaintiff's Motion to File Under Seal*

Plaintiff filed a motion, asking the Court to file the exhibits to her reply to the

motion to compel under seal. (ECF No. 119). The exhibits that Plaintiff proposes be filed under seal include emails that were sent to or from Plaintiff and short excerpts from the depositions of Defendants Diana France and Kayla Byrd McDowell. (ECF Nos. 119-4 through 119-9). All exhibits are redacted to remove C.G. and K.P.'s names. (*Id.*). Plaintiff asserts that the redactions alleviate all confidentiality concerns, but she nonetheless filed the motion because the CCBOE stated that it would prefer the exhibits be filed under seal. (ECF No. 120).

The CCBOE filed a response, stating that the exhibits should be filed under seal because the CCBOE marked the emails confidential upon producing them to Plaintiff, and the parties agreed that all depositions in this matter would be designated as confidential. (ECF No. 138 at 2). The CCBOE notes that Plaintiff never disputed the confidential designations. (*Id.*). According to the CCBOE, Plaintiff's suggestion that the redactions resolve any concerns about confidentiality is not a remedy or "work around" provided in the agreed protective order. (*Id.* at 2-3). In reply, Plaintiff notes that the protective order permits the use of confidential documents as an exhibit or as evidence at a hearing or trial upon certain conditions, such as creating a mutually acceptable redacted version. (ECF No. 143 at 1). Plaintiff maintains that she has followed the directives of the protective order, and she cannot ascertain what confidential information, if any, the specific exhibits contain in their redacted state. (*Id.* at 1-2).

### *D. Motion for Leave to File Surreply*

The CCBOE filed a motion for leave to file a surreply in opposition to the motion to compel. (ECF No. 142). The CCBOE asserts that the purpose of the surreply is to address an argument that Plaintiff raised "for the first time" in her reply that there is a disagreement on the definition of restraint. (ECF No. 142-1 at 1). The CCBOE attached to

5

the proposed surreply the entire CPI Nonviolent Crisis Intervention Training Participant Workbook, Second Edition. (ECF No. 142-2).

## II. Relevant Law

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery in this action.

It states, in relevant part:

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-536-FL, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). "Relevance is not, on its own, a high bar." *Ceresini v. Gonzales*, No. 3:21-CV-40 (GROH), 2022 WL 628520, at *3 (N.D.W. Va. Mar. 3, 2022) (citation omitted). As stated in the rule, information "need not be admissible in evidence to be discoverable." *Id*. (quoting Fed. R. Civ. P. 26(b)(1)). "Federal courts have long understood that relevancy for discovery purposes is defined more broadly than relevancy for evidentiary purposes." *Id*.

Even if seeking relevant information, the discovery request must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "Although Rule 26(b)(1)'s relevance inquiry does not, itself, pose a 'high bar,' its proportionality requirement mandates

consideration of multiple factors in determining whether to allow discovery of even relevant information." *Ceresini*, 2022 WL 628520, at *3. The factors include: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

A party dissatisfied with a discovery response or lack of response can move for an order compelling disclosure or discovery after attempting to confer with the party that submitted the response or failed to respond. Fed. R. Civ. P. 37(a). The party resisting discovery, not the party seeking discovery, bears the burden of persuasion. *Jonathan R. v. Just.*, No. 3:19-CV-00710, 2023 WL 8629147, at *2 (S.D.W. Va. Dec. 13, 2023); *McEvoy v. Diversified Energy Co. Plc*, No. 5:22CV171, 2023 WL 6192769, at *1 (N.D.W. Va. May 15, 2023); *Fine v. Bowl Am., Inc.*, No. CV SAG-21-1967, 2023 WL 8479250, at *2 (D. Md. Dec. 7, 2023); *Perez v. Huneycutt*, No. 5:22-CV-00120-MR, 2023 WL 8813553, at *2 (W.D.N.C. Dec. 20, 2023); *Doe v. Mast*, No. 3:22CV00049, 2023 WL 8481049, at *2 (W.D. Va. Dec. 7, 2023); *United States v. White*, No. 2:23-CV-00001-BO, 2023 WL 8451744, at *7 (E.D.N.C. Dec. 6, 2023). As such, conclusory and unsubstantiated allegations are simply insufficient to support discovery objections based on the grounds of annoyance, burdensomeness, oppression, or expense. *Id.*

### III. Discussion

#### A. *Motion to Compel*

Plaintiff asks the Court to compel production of "all video" from March 30 and May 10, 2021. (ECF Nos. 105 at 9, 119-3 at 1). She contends that such information is responsive to her February 12, 2024 discovery request for production of "all video demonstrating the

purported need for, and use of, restraint on or toward K.P." on those dates. (ECF Nos. 105, 105-3 at 3). However, the flaw in Plaintiff's motion is that Plaintiff has not made even the most minimal showing that the video footage at issue is responsive to her discovery request. Plaintiff explicitly asked for video demonstrating the purported need for or use of restraint toward K.P., and there is zero indication that video from March 30 or May 10 demonstrates either of those scenarios. Plaintiff emphasizes that K.P. was restrained in the sensory room on March 31 and shoved on May 11. However, Plaintiff does not show any connection between those incidents and any behaviors or events that occurred on March 30 and May 10. Moreover, the documentation that the CCBOE provided regarding the March 31 and May 11 incidents likewise does not reference anything occurring the specific days before the incidents. Based on the arguments and materials before the Court, it is no more likely that K.P. was restrained or acted in a way that resulted in restraint on March 30 and May 10 than it was on any other day that he was a student at Explorer Academy.

Furthermore, although Plaintiff makes a point of accentuating that she requested classroom video of K.P. since May 2021, she never moved to compel its production before now. (ECF No. 105 at 1). Pursuant to the local rules of this Court, a motion to compel is waived if it is not filed within 30 days after a discovery response is due. L.R. Civ. P. 37.1(c). That period can be extended by the Court for good cause or stipulation of the parties, but Plaintiff has not satisfied those requirements. *Id.* She does not demonstrate that there is good cause for, or an agreement to allow, a belated motion to compel production of video of K.P. The deadline to serve discovery requests ended in this case on April 18, 2024. (ECF Nos. 70, 71). Plaintiff cannot circumvent that deadline and the rules of this Court by attempting to connect her current needs to discovery requests made many months or

8

years ago. For the above reasons, the Court **DENIES** the motion to compel. (ECF No. 105).

### B. Motion to File Under Seal

As referenced above, Plaintiff asked to file under seal four of the exhibits to her reply to the motion to compel. (ECF No. 119). The exhibits that Plaintiff proposes be filed under seal include emails that were sent to or from Plaintiff and excerpts from two depositions taken in this action. (ECF Nos. 119-4 through 119-7). Plaintiff redacted the exhibits to remove C.G. and K.P.'s names. (*Id.*). She asserts that the redactions alleviate all confidentiality concerns, but she filed the motion because the CCBOE stated that it would "prefer" the exhibits be filed under seal, and Plaintiff wants the Court to resolve the issue. (ECF No. 120).

The undersigned is cognizant of the well-established Fourth Circuit precedent recognizing a presumption in favor of public access to judicial records. *Ashcraft v. Conoco, Inc.,* 218 F.3d 288 (4th Cir. 2000). As stated in *Ashcraft,* before sealing a document, the Court must follow a three-step process: (1) provide public notice of the request to seal; (2) consider less drastic alternatives to sealing the document; and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting alternatives. *Id.* at 302. The Court acknowledges that public access to judicial records "is necessary in the long run so that the public can judge the product of the courts in a given case." *Columbus–America Discovery Group v. Atlantic Mut. Ins. Co.,* 203 F.3d 291, 303 (4th Cir.2000).[1] The right of the public to access materials filed

---

[1] "'Judicial records' are generally defined as 'documents filed with the court [that] play a role in the adjudicative process, or adjudicate substantive rights.'" *Cochran v. Volvo Group North America, LLC,* 2013 WL 784502, at *1 (M.D.N.C. March 1, 2013) (quoting *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(d),* 707 F.3d 283, 290 (4th Cir. 2013)).

with the court derives from two independent sources: the First Amendment and the common law. *Stone v. University of Md. Med. Sys. Corp.,* 855 F.2d 178, 180 (4th Cir.1988). The First Amendment right of access provides greater substantive protection to the public, but "has been extended only to particular judicial records and documents." *Id.* at 180–81 (citing *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 253 (4th Cir.1988) (documents filed in connection with summary judgment motion in civil case); *In re Washington Post,* 807 F.2d 383, 390 (4th Cir.1986) (documents filed in connection with plea hearings and sentencing hearings in criminal cases)). When a First Amendment right is present, the court may restrict access only if "(1) closure serves a compelling interest; (2) there is a 'substantial probability' that, in the absence of closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that compelling interest." *Gonzalez v. Cuccinelli*, 985 F.3d 357, 377 (4th Cir. Jan. 14, 2021) (citations omitted).

In contrast, the common law presumes a right of access to all judicial records and documents, *id.,* but the presumption may be rebutted "if countervailing interests heavily outweigh the public interests in access." *Rushford,* 846 F.2d at 253. "At common law, a district judge must weigh the competing interests of the public's access to judicial proceedings and the interests of the individuals in keeping the information private and of the government in ensuring integrity in its processes." *Gonzalez*, 985 F.3d at 376. The party seeking restriction of records bears the burden "of showing some significant interest that outweighs the presumption." *Rushford,* 846 F.2d. at 253. Factors that the court should consider in weighing the competing interests "include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an

10

important historical event; and whether the public has already had access to the information contained in the records." *Gonzalez,* 985 F.3d at 376 (quoting *In re Knight Publ. Co.,* 743 F.2d 231, 235 (4th Cir. 1984)).

Materials attached to discovery motions arguably are not "judicial records" at all. *See Kinetic Concepts, Inc. v. Convatec, Inc.,* 2010 WL 1418312 at *7 (M.D.N.C. April 2, 2010). In *Kinetic Concepts,* the district court quoted an unpublished opinion in which the Fourth Circuit "joined other courts in '[h]olding that the mere filing of a document with a court does not render the document judicial.'" *Id.* (quoting *In re Policy Mgt. Sys. Corp.,* 67 F.3d 296, 1995 WL 541623, at *4 (4th Cir. Sept. 13, 1995)). Although the Fourth Circuit has not explicitly resolved the question of whether discovery motions and materials attached to discovery motions are judicial records, the Court has stated that the right of public access to judicial records attaches only when the records "play a role in the adjudicative process, or adjudicate substantive rights." *In re Application for an Order Pursuant to 18 U.S.C. Section 2703(D),* 707 F.3d 283, 290 (4th Cir. 2013). "Because discovery motions … involve procedural rather than 'substantive' rights of the litigants, the reasoning of *In re Policy Management* supports the view that no public right of access applies [to discovery motions]." *Kinetic Concepts, Inc.,* 2010 WL 1418312, at *9; *see also In re Providence Journal Com.,* 293 F .3d 1, 9 (1st Cir.2002); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1312 (11th Cir.2001); *United States v. El– Sayegh,* 131 F.3d 158, 163 (D.C.Cir.1997); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.,* 998 F.2d 157, 165 (3rd Cir.1993). Consequently, in the absence of a public right to access materials, the court considering a motion to seal applies the "good cause" standard set forth in Fed. R. Civ. P. 26(c). *Pintos v. Pacific Creditors Ass'n.,* 565 F.3d 1106, 1115 (9th

Cir.2009); *Altria Client Servs. LLC v. R.J. Reynolds Vapor Co.*, No. 1:20CV472, 2022 WL 2489054, at *9 (M.D.N.C. July 6, 2022).

In this case, good cause is not established to file the exhibits under seal. The movant herself does not think the documents should be filed under seal, and the CCBOE has not offered a single justification that these documents are confidential in their redacted form. (ECF No. 120, 138, 143). The CCBOE relies on the fact that it designated the emails as confidential when it produced them to Plaintiff, and the parties agreed that all depositions would be designated confidential in this matter. (*Id.* at 2). However, these documents have now been redacted, and it is unclear what issue the CCBOE has with filing them in the public record. Reviewing the documents, the Court does not find any confidential information that should be shielded from disclosure.

Furthermore, the CCBOE attached arguably more sensitive documents, including detailed incident and injury reports relating to K.P., to its response to the motion to compel without marking them confidential or asking to file them under seal. (ECF No. 116-2, 116-3). The CCBOE found its redactions adequate to address any confidentiality concerns, but for some reason does not find it adequate in this instance. The only distinction between the exhibits that the CCBOE attached to its response and the exhibits that Plaintiff attached to her reply appears to be that the CCBOE marked the emails as confidential, and the parties agreed that depositions would be designated as confidential in this case. (ECF No. 138 at 2). Neither of those reasons in any way explain what actual information in the exhibits is confidential. Reviewing the documents at issue and considering the parties' arguments, the undersigned finds that good cause has not been established to seal the exhibits at issue. The Court **DENIES** the motion to file under seal. (ECF No. 119).

### C. *Motion for Leave to File Surreply*

The CCBOE asks for leave to file a surreply to its response in opposition to the motion to compel. (ECF No. 142). Upon reviewing the motion, surreply, and attachments, the Court finds that the tendered documents are not material to resolution of Plaintiff's motion to compel. Thus, the Court **DENIES** the motion. (ECF No. 142).

The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented parties.

**ENTERED**: May 21, 2024

Cheryl A. Eifert
United States Magistrate Judge