IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**C.G., individually and as parent, guardian,
and next friend of K.P., a minor**

    **Plaintiff,**

v.                                                         Case No.:  3:23-cv-00373

**CABELL COUNTY BOARD OF EDUCATION,
KIM CONWAY,
DIANA FRANCE,
KAYLA BYRD MCDOWELL, and
BROOKE HECK,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants' Motion to Seal, (ECF No. 134), and Defendants' Motion to Order Psychiatric Independent Medical Examination of K.P., (ECF No. 134-1). For the following reasons, the Court **GRANTS** the motion to seal, (ECF No. 134), but **DENIES** the motion for a psychiatric examination, (ECF No. 134-1).

### I.   Relevant Facts and Procedural History

On May 5, 2023, Plaintiff C.G. filed a complaint, asserting that her autistic son, K.P., was mistreated when he was a nine-year-old student at Explorer Academy during the spring semester of 2021. (ECF No. 1 at 1, 4). Explorer Academy is a school controlled and maintained by Defendant Cabell County Board of Education ("CCBOE"). (*Id.* at 2). The individual named defendants were CCBOE employees that

1

interacted with K.P. (*Id*. at 2, 6-8). Plaintiff alleges that Defendants' negligence and the CCBOE's negligent supervision caused K.P. great mental and emotional distress and loss of enjoyment of life. (*Id*. at 12, 13). In addition, Plaintiff claims that acts of civil assault and battery caused him emotional distress. (*Id*. at 14, 15, 16). Plaintiff asserts a separate claim of intentional infliction of emotional distress. (*Id*. at 17).

On August 3, 2023, the Court set the initial scheduling deadlines in this case. (ECF No. 15). Among other dates, Defendants were ordered to provide their expert disclosures by March 12, 2024. (*Id*. at 2). On September 5, 2023, Plaintiff filed her fact witness disclosures in accordance with Rule 26(a)(1) of the Federal Rules of Civil Procedure. (ECF No. 134-8). Plaintiff identified, *inter alia*, behavior analysts Nathel Lewis and Ginger Totten from Diversified Assessment and Therapy Services ("Diversified") as the individuals who served as K.P.'s behavior analysts during the time of the incidents that form the basis of this litigation. (ECF No. 134-8 at 1-2). Plaintiff explained that Ms. Lewis and Ms. Totten have knowledge of the facts and causes of actions asserted in Plaintiff's complaint and K.P.'s disability, abilities, and needs. (*Id*.).

On January 8, 2024, Defendants sent Plaintiff a letter requesting a "Zoom IME (observation)" of K.P. (ECF No. 154-1). Defendants' counsel referenced that he had previously requested this independent medicine examination ("IME") on December 22, 2023. (*Id*.). On January 12, 2024, Plaintiff agreed to allow Defendants' expert to observe K.P., via Zoom, during some of his behavioral health therapy/instruction, so long as Diversified agreed to it. (ECF No. 154-2). Plaintiff's counsel was clear that Defendants or anyone acting on their behalf, including an expert, were not permitted to interact with K.P. or his instructor during the observation. (*Id*.).

2

On January 26, 2024, the Court entered an amended scheduling order in this case. Defendants' expert deadline was extended by one month to April 12, 2024. (ECF No. 54 at 2). On January 31, 2024, Defendants' counsel stated that he would "get some dates" when Defendants' expert was available by Zoom in order to coordinate the short clinical observation. (ECF No. 154-3 at 1). Defendants thanked Plaintiff's counsel for her help in regard to the observation. (*Id.*).

On February 29, 2024, the scheduling order was again modified. Defendants' expert disclosures were extended to May 13, 2024. (ECF No. 71 at 2). On April 11, 2024, Plaintiff filed her expert witness disclosures pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure. (ECF No. 134-3). As pertinent to this motion, Plaintiff disclosed four individuals who were not retained to provide expert testimony, but their testimony could be considered a blend of fact and expert opinion. (ECF No. 134-3 at 1, 3, 4, 6). Plaintiff included them in her expert disclosure, but she did not provide a written report as specified by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. (*Id.*). Those individuals, two of which were also listed in Plaintiff's fact witness disclosure, include:

1. Amy Reed, MSW, LCSW, is a clinical social worker, who has worked with and observed K.P. She is expected to testify regarding K.P.'s diagnoses and behavioral therapy, the treatment services that he needed in the past and will need in the future, and the impact of Defendants' actions on K.P., characteristics of children with autism spectrum disorder, and the impact of escalating a situation in which K.P. is in the middle of a verbal or physical behavior.

2. Whitney Fulton, M.D., is a psychiatrist, who is expected to testify regarding K.P.'s diagnoses; the causes of K.P.'s behaviors; all aspects of her treatment of K.P.; the relationship between K.P.'s behaviors and diagnoses; the medical necessity of all treatment, including any changes made to his treatment plan due to Defendants' conduct; the differences between children with autism and those classified as neurotypical; the impact of escalating a situation in which K.P. is in the middle of a verbal

3

    or physical behavior; and K.P.'s improvements since leaving Cabell County Schools.

3. Ginger Totten, MA, BCBA, is a behavior analyst that has provided services to Cabell County Schools and is expected to testify regarding the rationale for, procedures regarding, and proper application of Crisis Prevention Institute Nonviolent Crisis Intervention Training. In addition, she will testify regarding K.P.'s diagnoses and behavioral therapy, and the impact of Defendants' actions on K.P., including the type of services that he will need because of it.

4. Nathel Lewis, BCBA, is another behavior analyst that has provided services to Cabell County Schools. She is expected to testify regarding the same topics as Ms. Totten, as well as issues that she identified while K.P. was attending Explorer Academy, including the individual defendants' actions and treatment of K.P.

(*Id.* at 1-7).

On April 17, 2024, Defendants expressed to Plaintiff that they wished to have K.P. examined by a child psychiatrist and would provide potential dates. (ECF No. 154-4 at 1). According to Defendants' counsel, he hoped to avoid an examination, but it became necessary due to Plaintiff's disclosure of multiple individuals who will opine regarding K.P.'s alleged injuries and the causes of them. (*Id.*).

On April 18, 2024, Plaintiff filed supplemental expert disclosures. She added K.P.'s social worker, Ms. Reed, noting that Ms. Reed worked with K.P. and had knowledge and information regarding his disability, treatment, and the facts underlying this litigation. (ECF No. 134-9 at 2). Plaintiff also included Plaintiff's treating psychiatrist, Dr. Fulton, as someone who has knowledge and information regarding K.P.'s diagnoses, behaviors, treatment, and need for additional services. (*Id.* at 2-3).

On May 3, 2024, Defendants wrote Plaintiff a letter, specifying that they would like to have K.P. examined by psychiatrist Ralph S. Smith, Jr., M.D., on May 13, 2024.

4

(ECF No. 134-5). According to Plaintiff, Defendants contacted her again on May 6, 2024, to request an independent psychiatric examination ("IPE"), and Plaintiff reminded Defendants that she agreed to make K.P. available for an observation via Zoom, but there had never been an agreement regarding an IPE. (ECF No. 154 at 3). On May 13, 2024, Defendants filed the instant motion to seal and motion to order an IPE of K.P. (ECF Nos. 134, 134-1). Plaintiff filed a response in opposition to the motion for an IPE to which Defendants filed a reply. (ECF Nos. 154, 179).

## II. Discussion

### *A. Motion to Seal*

Defendants ask for the Court to file under seal their Motion to Order Psychiatric Independent Medical Examination of K.P. and attached exhibits. (ECF No. 134). The undersigned is cognizant of the well-established Fourth Circuit precedent recognizing a presumption in favor of public access to judicial records. *Ashcraft v. Conoco, Inc.,* 218 F.3d 288 (4th Cir. 2000). As stated in *Ashcraft,* before sealing a document, the Court must follow a three-step process: (1) provide public notice of the request to seal; (2) consider less drastic alternatives to sealing the document; and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting alternatives. *Id.* at 302.

In this case, Defendants' Motion to Order Psychiatric Independent Medical Examination of K.P. and attached exhibits shall be sealed and will be designated as sealed on the Court's docket. The Court deems this sufficient notice to interested members of the public. The Court has considered less drastic alternatives to sealing the documents, but in view of the nature of the information set forth in the documents— which is information generally protected from public release—alternatives to wholesale

5

sealing are not feasible at this time. Moreover, the information provided in the motion is submitted to the Court for the purpose of resolving a discovery dispute, rather than for disposition of substantive claims in this action. Accordingly, the Court finds that sealing the documents does not unduly prejudice the public's right to access court documents. The Court additionally notes that Plaintiff has not expressed any opposition to filing the documents under seal. The Court **GRANTS** Defendants' Motion to Seal, (ECF No. 134), and the motion and all attached documents shall remain under seal as filed by the Clerk.

### *B. Motion for Rule 35 Examination*

Turning to Defendants' motion for an IPE of K.P., (ECF No. 134-1), Fed. R. Civ. P. 35 allows the court where an action is pending to order a party "whose mental or physical condition […] is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." The order may only issue on a motion for good cause and on adequate notice to all parties. While Rule 35 is included in the section of the civil rules pertaining to disclosures and discovery, the Rule itself does not include any guidance as to when in the discovery process an examination must be completed, or an examiner's report produced.

Federal courts have not agreed on whether Rule 26 and Rule 35 are intended to be read independently or in conjunction with each other. *See Manni v. City of San Diego,* Case No. 11-cv-0435-W (DHB), 2012 WL 6025783, at *3 (S.D. Cal. Dec. 4, 2012) (collecting cases). If read together, reports issued under Rule 35 are subject to Rule 26(a)(2)'s disclosure requirements. This position has been taken on more than one occasion by courts in this district; for instance, in *Gonzales v. Marshall Univ. Bd. of Governors,* No. 3:18-CV-00235, 2019 WL 1560887, at *1 (S.D.W. Va. Apr. 10, 2019);

*see also Stratford v. Brown*, No. 2:17-CV-03963, 2018 WL 4623656, at *3 (S.D.W. Va. Sept. 26, 2018) ("As a preliminary matter, the Court is persuaded that Rules 26 and 35 act in tandem when determining whether to permit a Rule 35 examination requiring subsequent disclosure of the related report."); *Zumstein v. Boston Scientific Corp,* No. 2:13-cv-02344, 2014 WL 7236406, at *3 (S.D.W. Va. Dec. 17, 2014); *Shumaker v. West,* 196 F.R.D. 454, 456 (S.D.W. Va. 2000).

Importantly, even when courts have found a clear distinction between Rule 26 and Rule 35, such that "a Rule 35 exam does not necessarily have to be requested prior to expiration of the expert disclosure and discovery deadline ... the distinction evaporates when the moving party attempts to use the Rule 35 examiner and Rule 35 report in the place of a Rule 26(a)(2) expert and expert report." *Perez v. Viens,* Case No. 4:09-cv-3206, 2011 WL 855673, at *3 (D. Neb. Mar. 8, 2011) (citations omitted); *Cherryholmes v. Centers for Advanced Orthopaedics, LLC,* No. TDC-18-3541, 2019 WL 13225410, at *3 (D. Md. Aug. 20, 2019) (collecting cases which explain that a Rule 35 request must be coordinated with the Rule 26(a)(2) deadline); *Gibson v. Jensen*, No. 8:16CV296, 2017 WL 2982952, at *2–3 (D. Neb. July 12, 2017) ("[W]hen a Rule 35 examination is used to supplement or inform an expert's opinions for use at trial, the difference between the reports disappears, or begins to, and the court becomes more reluctant to allow a Rule 35 examination for the purpose of bolstering an expert's opinions out of time."). In other words, when the independent medical examination is performed for the purpose of providing, developing, or supplementing expert opinions, then courts tend to agree that the witness and report are subject to the Rule 26(a)(2) deadlines. *Gonzales*, 2019 WL 1560887, at *1.

In this case, Defendants state that the purposes of the proposed IPE are to challenge the legitimacy of the opinions expressed by Plaintiff's experts, determine if those opinions can be medically rebutted, and understand K.P.'s baseline mental health condition to assess whether the incidents in question caused additional stress, strain, or emotional grief as claimed by Plaintiff. (ECF No. 179 at 3-4). Therefore, it is indisputable that the expert disclosure deadline applies to the Rule 35 examination that Defendants propose. Defendants' expert disclosure deadline was May 13, 2024, yet Defendants did not even move for an IPE until that date. (ECF Nos. 71, 134-1). Any report obtained through the IPE would necessarily be late. In order to grant Defendant's motion, deadlines in the scheduling order that have already passed would have to be extended. To justify the extension of a past deadline, Defendant must show "excusable neglect." *Stratford,* 2018 WL 4623656, at *3 (holding that Rule 16(b) requires good cause to amend a scheduling order; "[a]dditonally, when a motion to modify a deadline is filed after the deadline's passage, the party also must establish "excusable neglect."). Excusable neglect is difficult to establish, depending upon a review of all relevant factors, with "the reason for the delay, including whether it was within the reasonable control of the movant" carrying the most significance. *Id.* at *2 (quoting *Thompson v. E.I. DuPont Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996)).

When conducting the requisite analysis, the undersigned finds that Defendants fail to demonstrate excusable neglect. Defendants indicate that the request for an IPE was prompted by Plaintiff's expert witness disclosure on April 11, 2024. (ECF Nos. 134-1, 179). However, Defendants knew for more than a year, upon the filing of Plaintiff's complaint in May 2023, that Plaintiff contended that Defendants' actions caused K.P.

8

great mental and emotional distress and loss of enjoyment of life. Indeed, Plaintiff asserted a separate claim of intentional infliction of emotional distress. (ECF No. 1 at 12-17). Defendants evidently elected to proceed with a Zoom observation of K.P. in his clinical setting in lieu of an IPE, but it does not appear that they ever scheduled it. (ECF Nos. 154-1, 154-2, 154-3).

Even if Plaintiff's expert disclosure constituted a surprise to Defendants, which is doubtful in light of the pleadings and discovery exchanged, Defendants did not move for the IPE for more than one month after receiving the expert disclosure. It is unclear why Defendants continued to ask Plaintiff for an IPE and waste valuable time instead of moving the Court for a Rule 35 examination. Plaintiff had already expressed her position that Defendants could observe K.P., but no one would be permitted to interact with or examine him for the purpose of this case. Defendants could have brought the issue to the Court's attention, but decided to wait until it was too late. Similar to other cases in which the Court denied belated requests for Rule 35 examinations, Defendants supply no rationale whatsoever for allowing the matter to sit, gathering dust.

The examination sought by Defendants is likely to lead to additional discovery. *Stratford,* 2018 WL 4623656, at *3 (noting that "there is a ripple effect necessarily caused by a Rule 35 examination ordered after Rule 26 disclosure deadlines."). At the very least, Plaintiff will want an opportunity to respond to or refute the outcome of the examination, which may result in further extensions of pretrial deadlines. Discovery in this matter ended on May 20, 2024, and the parties are in the midst of briefing dispositive motions. Taking into account all of the circumstances, the Court concludes that Defendants have not been diligent in pursuing an IPE and thus have failed to provide reasonable grounds to accommodate such a request at this late date. Therefore,

9

the Court **DENIES** Defendants' motion for an IPE. (ECF No. 134-1).

  The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented party.

          **ENTERED:** June 7, 2024

          Cheryl A. Eifert
          United States Magistrate Judge