IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**C.G., individually and as parent, guardian, and next friend of K.P., a minor**

      **Plaintiff,**

v.                                                                                                                 **Case No.: 3:23-cv-00373**

**CABELL COUNTY BOARD OF EDUCATION,
KIM CONWAY,
DIANA FRANCE,
KAYLA BYRD MCDOWELL, and
BROOKE HECK,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER[1]**

Pending before the Court are Plaintiff's Motion to File Under Seal Plaintiff's Memorandum of Law Supporting Motion for Sanctions Against Cabell County Board of Education for Spoliation of Evidence and Accompanying Exhibits A-F and I, (ECF No. 147); Motion for Sanctions Against the Cabell County Board of Education for Spoliation of Evidence, (ECF No. 149); and Motion for Leave to File Plaintiff's Reply in Support of Sanctions Against the Cabell County Board of Education for Spoliation of Evidence and its accompanying Exhibits 1-4 and 6 Under Seal, (ECF No. 191). For the

---

[1] An order disposing of a Rule 37 motion for sanctions is "undoubtedly a nondispositive matter." *Kebe ex rel. K.J. v. Brown*, 91 Fed. Appx. 823, 827 (4th Cir. 2004). The undersigned is authorized to rule on the motion under 28 U.S.C. § 636 and the Standing Order of this Court given the fact that no dispositive sanctions are granted. *Gov't Emps. Health Ass'n v. Actelion Pharms. Ltd.*, 343 F.R.D. 474, 476 n.1 (D. Md. 2023); *see also Packrite, LLC v. Graphic Packaging Int'l, LLC*, No. 1:17CV1019, 2020 WL 7133806, at *1 n.1 (M.D.N.C. Dec. 4, 2020), *report and recommendation adopted,* No. 1:17CV1019, 2021 WL 9681472 (M.D.N.C. Jan. 6, 2021).

1

following reasons, the Court **GRANTS** Plaintiff's motions. (ECF Nos. 147, 149, 191).

I.  **Relevant Facts and Procedural History**

On May 5, 2023, Plaintiff C.G. filed a complaint, seeking monetary damages for alleged mistreatment of her autistic son, K.P., when he was a nine-year-old student at Explorer Academy during the spring semester of 2021. (ECF No. 1 at 1, 4, 21). Explorer Academy is a school controlled and maintained by Defendant Cabell County Board of Education ("CCBOE"). (*Id.* at 2). The individual named defendants were CCBOE employees that interacted with K.P. (*Id.* at 2, 6-8). Plaintiff alleges that K.P.'s teacher and aides improperly restrained, shoved, threatened, made false accusations against, and verbally abused K.P., resulting in physical and emotional harm.

On May 20, 2024, Plaintiff filed the instant motion for sanctions, asserting that the CCBOE spoliated surveillance video of K.P.'s classroom despite Plaintiff's preservation requests. (ECF No. 149). The motion concerns two specific dates of footage: (1) March 31, 2021, when K.P. was put in a Crisis Prevention Institute ("CPI") restraint at school per a documented incident report and (2) April 13, 2021, when K.P. allegedly injured his teacher as reflected in an employee injury report. (ECF No. 147-1 at 8). Plaintiff argues that the CCBOE's failure to preserve the video prejudices her ability to present her case. (*Id.* at 10-11). She also suspects that the spoliation was intentional. (*Id.* at 12).

In response to the motion for sanctions, the CCBOE concedes that the video cannot be recovered, but it disputes that all of the information that would be available in the video is lost. (ECF No. 174-3 at 7). The CCBOE claims that Plaintiff can rely on the documented incident and employee injury reports from the days in question, and Plaintiff can elicit testimony from the witnesses listed in the reports. (*Id.*). In the

CCBOE's view, it took countless steps to preserve as much classroom video as possible. (*Id*. at 7-10). Further, the CCBOE asserts that Plaintiff has not been prejudiced, and there is no evidence whatsoever that the CCBOE intended to deprive Plaintiff of the video footage in this litigation. (*Id*. at 10-15). In reply, Plaintiff maintains that the CCBOE either made no effort to preserve the video or deleted it; either way, according to Plaintiff, the CCBOE spoliated the evidence. (ECF No. 193 at 1).

## II. <u>Discussion</u>

### A. *Motion for Sanctions*

Plaintiff seeks sanctions for the CCBOE's alleged spoliation of video of K.P.'s classroom from March 31 and April 13, 2021. (ECF No. 147-1 at 8). Spoliation of evidence refers to "the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Pratt v. Robbins*, No. 5:20-CV-170-GCM, 2024 WL 234730, at *1 (W.D.N.C. Jan. 22, 2024). Spoliation of electronically stored information ("ESI"), such as the video footage at issue, is governed by Rule 37(e) of the Federal Rules of Civil Procedure which states:

> If [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

3

Fed. R. Civ. P. 37(e). "The movant has the burden of proving all elements of Rule 37(e)." *Pratt*, 2024 WL 234730, at *2. District courts within the Fourth Circuit generally apply a "clear and convincing evidence standard" if the movant seeks the more extreme sanctions under Rule 37(e)(2). *Id.*

### 1. Information should have been preserved

A party seeking sanctions based on the spoliation of evidence must first establish that "the alleged spoliator had a duty to preserve material evidence." *Snell v. Reid*, No. 22-1869, 2024 WL 2815061, at *2 (4th Cir. June 3, 2024). At the very latest, the duty is triggered when a defendant is served with a complaint. *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 512 (S.D.W. Va. 2014). However, as relevant to this case, a party must preserve material evidence when it reasonably anticipates litigation. *Id.* It is well accepted that "the receipt of a demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence." *Id.* (citations omitted).

On May 14, 2021, Plaintiff emailed Tim Hardesty ("Hardesty"), Assistant Superintendent of District Support and Employee Relations, expressing that she discovered that K.P. was restrained several times that year, and she was "very concerned" about unnecessary and improper actions that may have been taken. (ECF No. 147-6 at 4). Plaintiff asked for "all video" to be preserved, so that it could be reviewed by the behavioral analyst assigned by the county. (*Id.*). Hardesty responded the same day that the Principal of Explorer Academy, Ryan McKenzie, was working with the technology department to "secure" the video. (*Id.* at 3). Hardesty explained that West Virginia law required preservation of video of special education classrooms for 90 days; thus, he stated that the school should have footage since sometime in

4

February. (*Id.*). On May 17, 2021, Plaintiff emailed Heather Scarberry, Director of Special Education ("Scarberry"), again expressing concerns about K.P. being restrained at school, as well as Plaintiff not receiving required written notification of the incidents. (*Id.* at 8). Plaintiff requested preservation of all video dating back 90 days from May 11, 2021, and she specifically requested that certain dates within that period, such as March 31, 2021, be provided to the behavior analyst for review. (*Id.*). Plaintiff continued to request to view the video, asserting in her communications that she had counsel and the CCBOE was violating state law by not making the footage available to her. (*Id.* at 9, 12). On July 15, 2021, Plaintiff asked for confirmation that the video beginning sometime in February 2021 was preserved. (*Id.* at 14). The same day, Hardesty confirmed his understanding that the video had been preserved. (*Id.* at 15). Plaintiff was never granted access to most of the video, and she eventually filed this action on May 5, 2023. (ECF Nos. 1, 151 at 7).

Based on the above, it is indisputable that the CCBOE had a duty to preserve the video of March 31 and April 13, 2021, due to reasonably anticipated litigation in which the classroom video would be material evidence. At a minimum, that duty was triggered on May 14, 2021, when Plaintiff expressed concerns that K.P. was being improperly restrained and mistreated at school, and she requested preservation of the video. The CCBOE does not appear to contest this element of the spoliation analysis. (ECF No. 174-3).

### 2. Evidence was lost

Turning to the next threshold consideration, "[i]nformation is lost for purposes of Rule 37(e) only if it is irretrievable from another source, including other custodians." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 107 (E.D. Va. 2018). Here, the

CCBOE admits that the video of March 31 and April 13, 2021 cannot be recovered. (ECF No. 174-3 at 6). However, it claims that the information contained in the videos is not lost because there are reports of the restraint incident on March 31, 2021 and the teacher injury that occurred on April 13, 2021, and Plaintiff can depose the individuals identified in the reports. (ECF No. 174-3 at 7). The reports and deposition testimony can only provide snapshots of certain events on those days based on the writer or witness's subjective recollection. (ECF Nos. 147-3, 147-8, 149-7, 149-8 at 4, 193-5). It defies logic to believe that those reports—one of which was not even written until months after the restraint incident in question, or testimony taken years later, are equivalent to a contemporaneous, objective videotape capturing the events in question as they occurred. *See, e.g., Butler v. Kroger Ltd. P'ship I*, No. 2:19CV673, 2020 WL 7483447, at *7 (E.D. Va. Nov. 30, 2020), *report and recommendation adopted,* No. 2:19CV673, 2020 WL 7482186 (E.D. Va. Dec. 18, 2020) (stating that surveillance video is the best evidence of what actually happened).

The video evidence was overwritten by newer footage and cannot be recovered. (ECF No. 174-3 at 7). Thus, it is indisputably lost within the meaning of Rule 37(e).

### 3. Reasonable steps were not taken to preserve the information

"The duty to preserve is not meant to impose an unreasonable burden on parties anticipating litigation; they need not preserve every shred of paper, every e-mail or electronic document, and every backup tape." *Steves & Sons, Inc.*, 327 F.R.D. at 108 (cleaned up). "However, a party generally must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." *Id.* Courts generally find that a "party breaches

6

its duty to preserve relevant evidence if it fails to act reasonably by taking positive action to preserve material evidence." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 525 (D. Md. 2010), *aff'd in part, modified in part,* 2010 WL 11747756 (D. Md. Nov. 1, 2010) (cleaned up). "The action must be reasonably calculated to ensure that relevant materials will be preserved, such as giving out specific criteria on what should or should not be saved for litigation." *Id.*

According to the CBBOE's Rule 30(b)(6) testimony provided by Jason Jackson, Director of Technology and Information Systems for Cabell County Schools ("Jackson"), the CCBOE uses a company named Verkada to preserve video of its special education classrooms. (ECF No. 174-5 at 4). At the time in question, the cameras in the classrooms stored 90 days of footage in their internal memory. (*Id.*). The cameras recorded over the oldest minute of the 90-day footage with every passing minute. (*Id.*). Within any given 90 days, the footage could be archived, or saved, in the cloud repository. (*Id.*). To do so, someone with access would send a command to the camera through Verkada's web interface. (*Id.*). During the 2020-2021 school year, four individuals had access to save the video of K.P.'s classroom, including Jackson, McKenzie, Scarberry, and Kristen Giles, Elementary Executive Director. (*Id.* at 4-5, 7). McKenzie, as Principal of the building, was the custodian of record for the files. (*Id.* at 4).

To save the video, the person with access had to select the exact date and time periods that he or she wanted to archive. (*Id.* at 7). In Verkada's system, if there is any error whatsoever, it fails to complete the archive. (*Id.*). A person with access can determine if the video successfully archived by clicking the "archives" tab. (*Id.* at 8). If the video failed to archive, it displays a progress bar; if the archive completed, it shows

7

a thumbnail of the video. (*Id.* at 8, 11, 12); *see also* (ECF No. 193-4 at 3-10). Jackson sporadically spot-checked the progress of the downloads, and he initiated some archives because it was so time intensive. (ECF No. 174-5 at 8, 9). However, neither Jackson, nor anyone else to CCBOE's knowledge, ever checked that the full 90-day footage was indeed preserved until it was too late. (*Id.* at 8, 9).

The CCBOE highlights its efforts to preserve the 90 days of video footage and the technology issues it encountered during the archival process. (ECF No. 174-3 at 8-10). However, as Plaintiff emphasizes, what is unmistakably absent from the CCBOE's argument that it took reasonable steps to preserve the footage is **<u>any</u>** evidence that it ever attempted to archive the footage from the dates in question: March 31 and April 13, 2021. *See* (ECF No. 193 at 4-5). Therefore, it is not simply a matter of the downloads encountering errors, taking too long, or failing. There is no evidence that the CCBOE initiated the downloads of the classroom for March 31 and April 13, 2021. (ECF Nos. 174-5 at 11, 193-1 at 11, 193-3 at 2). Footage of March 31, 2021 was specifically requested as far back as May 2021, and there was documented restraint on that date. Further, on April 13, 2021, there was documentation that K.P. injured a teacher. Thus, footage from April 13 is material to show how the CCBOE responded to the incident. The Court appreciates that the CCBOE attempted to download the oldest footage first to preserve as much footage as possible. However, slow equipment, user error, and other attempts to shift blame are simply insufficient. It was ultimately the CCBOE's responsibility to preserve the evidence and make reasonable decisions to do so. As stated, there is no evidence that the CCBOE even attempted to initiate downloads of the dates in question, and it certainly never checked to make sure that those dates were archived. Those actions cannot be considered reasonable.

8

Moreover, even assuming *arguendo* that the CCBOE could show that it attempted to archive the videos from March 31 and April 13, its attempts were inadequate in light of its knowledge that footage exceeding 90 days was being overwritten every passing minute. The CCBOE initiated downloads without ensuring in a timely manner that they all completed. The CCBOE largely left the archival process to run on its own, absent Jackson sporadically checking some of the downloads. The CCBOE was well aware that footage was continually being deleted, but it did not take any actions within the 90 days to secure the videos that seemed to be stuck in progress. The CCBOE blames the fact that McKenzie was a full time principal, who was attending to other duties, and he could not continuously monitor the downloads. However, McKenzie was not the only one who could archive the videos. The CCBOE had a technology department and other employees who could have helped with the archival process. Alternatively, the CCBOE could have contracted someone to help or reached out to Verkada to explore options before the videos were lost. It was the CCBOE's responsibility to archive the videos before they were overwritten, and it failed to take adequate steps to do so.

### 4. Information cannot be restored or replaced

The CCBOE does not dispute, and the evidence clearly demonstrates, that the video footage cannot be recovered. (ECF No. 193-1 at 12, 193-4 at 2). As noted, the CCBOE argues that the incident report, employee injury report, and deposition testimony can provide some of the information regarding the events in question. However, for the reasons discussed, that subjective evidence is not equivalent to the objective surveillance footage of the classroom. The court will presume that the fourth element is satisfied here because Plaintiff has sufficiently demonstrated that the videos

9

have not, and cannot, be restored or recovered by other means. *In re: Ethicon, Inc.*, No. 2:12-CV-00497, 2016 WL 5869448, at *3 (S.D.W. Va. Oct. 6, 2016).

For all of the above reasons, the Court determines that Plaintiff has established all of the threshold factors that the CCBOE spoliated the video evidence from March 31 and April 13, 2021.

### 5. *Sanctions are warranted*

Once all four criteria are met, Rule 37(e) offers two alternatives for the Court to impose sanctions for spoliation of evidence:

> The first avenue, Rule 37(e)(1), requires a court to make a finding of prejudice before sanctions may be warranted. The second avenue, Rule 37(e)(2), requires a court to make a finding that a party acted with the intent to deprive the opposing party of the ESI prior to imposing sanctions. ... The kind of prejudice sufficient to trigger Rule 37(e)(1) occurs when, as a result of the spoliation, the party claiming spoliation cannot present evidence essential to its underlying claim. ... To justify the more severe sanctions of Rule 37(e)(2), ... the moving party must demonstrate that the failure to preserve was motivated by an intent to deprive the moving party of the use of the information in the litigation. ... Negligent or even grossly negligent behavior will not suffice. ... The burden of proof is on the party seeking sanctions, and the standard of proof in the Fourth Circuit appears to be clear and convincing evidence where, as here, relatively harsh sanctions are sought.

*Fowler v. Tenth Planet, Inc.*, 673 F. Supp.3d 763, 767 (D. Md. 2023) (citation and markings omitted).

#### a. **Plaintiff was prejudiced by the spoliation**

The first issue before the Court regarding sanctions is whether the spoliation prejudiced Plaintiff and, if so, what measure would cure the prejudice. Fed. R. Civ. P. 37(e)(1). Rule 37(e) itself "does not define prejudice; nor does it place the burden of proving or disproving prejudice on one party or the other." *Wall v. Rasnick*, No. 7:17CV00385, 2023 WL 7490862, at *37 (W.D. Va. Nov. 13, 2023) (citing Fed. R. Civ.

P. 37(e) advisory committee's note to 2015 amendment). "[R]esolving the issue of prejudice 'necessarily includes an evaluation of the information's importance in the litigation.'" *Carter v. Ely*, No. 7:20-CV-00713, 2023 WL 6216721, at *3 (W.D. Va. Sept. 22, 2023) (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). In general, "courts find prejudice when spoliation compromises a party's ability to present its case." *Id.* (citing *Knight v. Boehringer Ingelheim Pharms., Inc.*, 323 F. Supp. 3d 837, 845 (S.D.W. Va. 2018)). "The moving party cannot be expected to demonstrate with certainty the content of the lost evidence, but the moving party must demonstrate a likelihood that the lost evidence would have been favorable to the moving party's case." *Wall*, 2023 WL 7490862, at *37 (citation and markings omitted). The degree of prejudice that a party suffered from spoliation of evidence "ranges along a continuum from an inability to prove claims or defenses to little or no impact on the presentation of proof." *Steves & Sons, Inc.*, 327 F.R.D. at 110 (citation and markings omitted).

Here, the CCBOE's spoliation of video from March 31 and April 13, 2021 clearly prejudices Plaintiff's ability to prove her case. Plaintiff alleges, among other things, that the defendants failed to prevent K.P. from being physically harmed at school, or to intervene when K.P. was being mistreated and abused. (ECF No. 1). Plaintiff argues that K.P.'s teacher, Defendant Kim Conway ("Conway"), pushed and/or hit and unnecessarily restrained K.P.; K.P.'s teacher's aides, Defendants Kayla Byrd McDowell and Diana France, held K.P. down on the ground; and those individual defendants attempted or threatened to inflict that abuse. (*Id.*). In addition, Plaintiff alleges that Conway defamed K.P. by falsely claiming that he assaulted and/or injured her. (*Id.* at 16). Finally, Plaintiff argues that the individual defendants' actions were so atrocious,

11

extreme, and outrageous as to exceed the bounds of decency and shock the conscience. (*Id.* at 17).

The video of March 31, 2021 is undoubtedly material to the above claims. It was the only objective evidence of what occurred on that date when K.P. was restrained. Plaintiff is now limited to testimony and the terse incident report to support her claims that K.P. was improperly harmed on that date. Furthermore, Conway documented that K.P. threw a book at her and injured her on April 13, 2021. The video would corroborate or disprove that documentation, which is relevant to Plaintiff's defamation claim against Conway. In addition, Plaintiff alleges that there are discrepancies between CCBOE's documentation and the video evidence. (ECF No. 147-1 at 13, 193 at 7). In Plaintiff's view, and as supported by the record, the fact that there is not an incident report showing that K.P. was restrained on April 13, 2021 does not necessarily prove that he was not restrained, touched, or harmed on that date. (*Id.*). Without the video, it is impossible to state with certainty what occurred. For those reasons, the Court finds that the CCBOE's failure to preserve the requested video hinders Plaintiff's ability to prove her case. While it does not completely preclude Plaintiff from proving her claims, it certainly impacts her presentation of proof.

"When imposing sanctions under Rule 37(e)(1), the range of curative measures is quite broad and much is entrusted to the court's decision." *Jenkins v. Woody*, No. 3:15CV355, 2017 WL 362475, at *18 (E.D. Va. Jan. 21, 2017) (cleaned up) (citing Fed. R. Civ. P. 37(e) advisory committee's note). Overall, the sanctions available for spoliation under Rule 37(e) may include assessing attorneys' fees and costs, allowing the parties to present evidence and argument to the jury regarding the loss of evidence, precluding evidence, striking documents from the record, adverse instructions, or

imposing the harsh, case-dispositive sanctions of dismissal or judgment by default permitted under Rule 37(e)(2). *Id.*; *Nat'l Fair Hous. All. v. Bank of Am., N.A.*, No. CV SAG-18-1919, 2023 WL 4669560, at *7 (D. Md. Jan. 23, 2023) (citations and markings omitted). "Courts should select the least harsh sanction that can provide an adequate remedy." *Nat'l Fair Hous. All.*, 2023 WL 4669560, at *7. In order to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine, the sanction should be designed to: "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he or she would have been in absent the wrongful destruction of evidence by the opposing party." *Jenkins*, 2017 WL 362475, at *18.

In this case, Plaintiff seeks (1) permission to examine the CCBOE at trial about the spoliation of evidence and related matters; (2) a jury instruction that CCBOE deleted video relevant to this case, and the jury may consider that fact when deciding the CCBOE's credibility and making factual determinations; and (3) attorneys' fees and costs. (ECF No. 147-1 at 11). These requested sanctions are patently reasonable and appropriate in light of the spoliation at issue. In a case cited by Plaintiff, the United States District Court for the Eastern District of Virginia imposed similar sanctions for spoliation of video evidence. *Jenkins v. Woody*, No. 3:15CV355, 2017 WL 362475, at *18 (E.D. Va. Jan. 21, 2017).

For those reasons, to cure the prejudice imposed by the CCBOE's failure to preserve video of March 31 and April 13, 2021 and accomplish the prophylactic, punitive, and remedial rationales of Rule 37(e), the Court **ORDERS** the following:

1. Plaintiff shall be permitted at trial, at the discretion of the presiding judge, to question the CCBOE regarding the spoliation of this evidence;

2. The jury shall be instructed, at the discretion of the presiding judge, concerning the CCBOE's spoliation of this evidence and that it should consider the spoliation in making its determination;

3. The CCBOE shall be prohibited, at the discretion of the presiding judge, from arguing that the spoliated video corroborated its version of events for those dates; and

4. Plaintiff shall be awarded her reasonable attorneys' fees and costs associated with the motion for sanctions.

Plaintiff shall have through and including **July 5, 2024** in which to file an affidavit of reasonable fees and expenses incurred in making the motion for sanctions, as well as any supportive documentation or argument to justify the amount of fees and expenses requested. *See Robinson v. Equifax Information Services, LLC,* 560 F.3d 235, 243-44 (4th Cir. 2009). Failure to timely file the affidavit and supporting documentation shall result in a denial of fees and costs. The CCBOE shall have through and including **July 19, 2024** in which to respond to Plaintiff's submissions. The response shall include any justification that would obviate against an award of expenses. Failure to file a response shall be deemed an admission of or agreement with the representations and arguments of Plaintiff. Plaintiff shall have through and including **July 26, 2024** in which to file a reply memorandum. At the conclusion of the period allowed for briefing, the Court shall either schedule a hearing, or simply rule on the request for reasonable fees and costs.

### b. The spoliation was not intentional

The Court notes that Plaintiff additionally argues that sanctions are warranted under Rule 37(e)(2) of the Federal Rules of Civil Procedure. (ECF Nos. 147-1 at 11-13, 193 at 7-8). Under that subsection of the Rule, Plaintiff seeks (1) summary judgment on her claims against the CCBOE and (2) summary judgment on her 42 U.S.C. § 1983 claim against Conway, France, and McDowell or, alternatively, an adverse inference jury instruction. (ECF Nos. 147-1 at 13, 193 at 8). Under Rule 37(e)(2), Plaintiff must show that the CCBOE engaged in willful or intentional conduct, regardless of whether the spoliation prejudiced her. *Boshea v. Compass Mktg., Inc.*, No. CV ELH-21-00309, 2024 WL 811468, at *6 (D. Md. Feb. 27, 2024). Plaintiff has the burden of proving by clear and convincing evidence that the CCBOE's failure to preserve the ESI at issue was motivated by an intent to deprive her of using that information in the litigation. *Id.* "Willfulness is equivalent to intentional, purposeful, or deliberate conduct." *Id.* (citation omitted). "Negligent or even grossly negligent behavior" does not suffice. *Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*, No. SAG-18-3403, 2020 WL 1809191, at *4 (D. Md. Apr. 9, 2020) (citing Fed. R. Civ. P. 37(e)(2) Comm. Note to 2015 Amendment). The court "has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives … and other factors." *Fowler*, 673 F. Supp.3d at 768 (citation omitted).

In this matter, Plaintiff has not shown by clear and convincing evidence that the CCBOE intentionally spoliated the video at issue. Plaintiff offers nothing more than her suspicions of nefarious motives. The record before the Court belies her suspicions that the spoliation was intentional. The precise day that Plaintiff requested the preservation of video, McKenzie began archiving it. (ECF Nos. 147-6 at 6, 174-6 at 1). The CCBOE

15

was prompt and responsive in communicating with Plaintiff regarding her request for video. (ECF No. 147-6 at 2-15). While the CCBOE's actions regarding preserving the evidence were clearly deficient, there is no indication that the CCBOE intended to spoliate the video to deprive Plaintiff of it. In fact, upon realizing that video did not archive, Jackson contacted Verkada about the issue. (ECF No. 193-4 at 1-2). For those reasons, the Court finds that more severe sanctions are not warranted under Rule 37(e)(2).

### B. *Motions to Seal*

Plaintiff asks to file under seal her briefs and accompanying exhibits related to her motion for sanctions because they reference and include confidential documents. (ECF Nos. 147, 191). The undersigned is cognizant of the well-established Fourth Circuit precedent recognizing a presumption in favor of public access to judicial records. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288 (4th Cir. 2000). As stated in *Ashcraft,* before sealing a document, the Court must follow a three-step process: (1) provide public notice of the request to seal; (2) consider less drastic alternatives to sealing the document; and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting alternatives. *Id.* at 302.

The Court deems the motions to file under seal sufficient notice to interested members of the public. The Court has considered less drastic alternatives to sealing the documents, but in view of the nature of the information set forth in the documents—which is information generally protected from public release—alternatives to wholesale sealing are not feasible at this time. Moreover, the information provided in the motion is submitted to the Court for the purpose of resolving a discovery dispute, rather than for disposition of substantive claims in this action. Accordingly, the Court finds that

16

sealing the documents does not unduly prejudice the public's right to access court documents. The Court **GRANTS** the motions to seal, (ECF Nos. 147, 191), and the memoranda and all attached documents shall remain under seal as filed by the Clerk.

The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented party.

**ENTERED:** June 20, 2024

Cheryl A. Eifert
United States Magistrate Judge