IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

C. G., individually and as parent, guardian,
and next friend of K. P., a minor,

                              Plaintiff,

v.                                                                 CIVIL ACTION NO.   3:23-0373

CABELL COUNTY BOARD OF EDUCATION,
KIM CONWAY,
DIANA FRANCE,
KAYLA BYRD McDOWELL, and
BROOKE HECK,

                              Defendants.

**MEMORANDUM OPINION & ORDER**

Pending is Defendants' Motion to Enforce Settlement. ECF No. 221. On October 16, 2024, the Court held an evidentiary hearing regarding this Motion. The Court considered exhibits attached to the briefing for this Motion and one additional exhibit introduced at the hearing.[1] For the reasons below, the Court **GRANTS** the Defendants' Motion and finds that the parties agreed to a settlement of $220,000 paid to the Plaintiffs in exchange for release of all claims against the Defendants, including any attorneys' fees owed.

Defendants argue that the parties entered into a settlement agreement on July 2, 2024. Prior to this date, the parties negotiated by email and phone over the course of several weeks. *See* Pl.'s Resp., Ex. A; Def.'s Mot., Ex. B. On June 20, 2024, Magistrate Judge Eifert awarded the Plaintiffs attorneys' fees and costs in connection with a motion for sanctions. Mem. Op. &

---

[1] *See* Defendants' Motion to Enforce Settlement (Def.'s Mot.), ECF No. 221; Plaintiffs' Response in Opposition to Motion to Enforce Settlement (Pl.'s Resp.), ECF No. 223; Defendants' Reply (Def.'s Reply), ECF No. 224; Exhibit List, ECF No. 231.

Order, ECF No. 211. Between June 19 and June 25, counsel exchanged emails in which Defendants repeatedly referred to their offer as a "global settlement offer" "for a resolution of all claims as to all parties, including attorneys fees and costs." *See* Pl.'s Resp., Ex. A. Plaintiffs' counsel countered these offers with various dollar amounts "as a global settlement." *Id.*

On July 2, Plaintiffs' counsel emailed to defense counsel: "Our clients accept your offer to resolve all their claims for $220,000 (inclusive of attorney fees). I assume you would like to take the first pass at a settlement agreement? Given that we will have to seek court approval, I don't want to let any grass grow under our feet." Def.'s Mot., Ex. A. Defense counsel confirmed he would draft a "proposed agreement." Def.'s Mot., Ex. B. Plaintiffs' counsel thanked defense counsel for his work "getting this over the goal line." *Id.* Defense counsel offered thanks in return and wrote: "Glad to have it done. We discussed this a little on the phone but just to confirm, you will not be proffering documents or time entries in support of the motion for sanctions and we will just let that wither on the vine as the case resolves, correct?" *Id.* Plaintiffs' counsel responded: "Correct. The settlement is inclusive of all attorneys fees, including those that might have been awarded as sanctions." *Id.*

On August 1, 2024, Plaintiffs' counsel raised the issue of a mutual release of claims for the first time, writing in an email: "We were anticipating this would be a mutual release. Do you have a problem with that?" Def.'s Mot., Ex. B. Defense counsel responded: "There are no counterclaims so there's nothing for my people to release." *Id.* The Defendants rejected the suggestion of a mutual release on August 6. *Id.* Now, Plaintiffs argue that there was no meeting of the minds because Plaintiffs' counsel understood the term "global settlement" to include a mutual release of claims, including any potential claims. *See* Pl.'s Resp. at 1.

The Court must determine whether a complete agreement was reached and, if there is an agreement, the terms of that agreement. *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540-41 (4th Cir. 2002). Where a district court concludes an agreement exists and can ascertain its terms, the court has "inherent authority" to enforce the agreement. *Id.* at 540 (citing *Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981)).

West Virginia law favors the resolution of disputes by settlement. *See, e.g., Levine v. Rockwool Int'l A/S*, 888 S.E.2d 903, 907 (W. Va. 2023). "[S]ettlement agreements are to be construed 'as any other contract.'" *Id.* (quoting *Floyd v. Watson*, 254 S.E.2d 687, 690 (W. Va. 1979)). There must be a meeting of the minds, which requires parties have "the same understanding of the terms of the agreement reached." *Messer v. Huntington Anesthesia Grp., Inc.*, 664 S.E.2d 751, 759 (W. Va. 2008). A meeting of the minds "may be shown by direct evidence of an actual agreement or by indirect evidence through facts from which an agreement may be implied." *Miller v. Liberty Mut. Fire Ins. Co.*, 393 F. Supp. 2d 399, 406 (S.D.W. Va. 2005) (quoting *Bailey v. Sewell Coal Co.*, 437 S.E.2d 448, 451 (W. Va. 1993)). Communications between counsel can result in a settlement agreement even without a signed contract. *See Levine*, 888 S.E.2d at 907-8 (collecting cases).

Here, the parties entered into a settlement agreement when Plaintiffs' counsel accepted a settlement offer from Defendants on July 2, 2024. Plaintiffs' argument that counsel understood the term "global settlement" to include a mutual release is not borne out in any exchanges prior to August 1, 2024. Instead, Defendants' offer "for a resolution of all claims as to all parties, including attorneys fees and costs" represented that the settlement covered claims against multiple defendants as well as the pending award of attorneys' fees.

The parties' subsequent correspondence supports the finding that there was a meeting of the minds. Defense counsel asked to "confirm" the inclusion of any attorneys' fees that could have been awarded as sanctions and referenced an earlier conversation about that issue. Def.'s Mot., Ex. B. On the other hand, when Plaintiffs' counsel asked about the mutual release, he said Plaintiffs "were anticipating" the mutual release but made no reference to earlier negotiations regarding the term. *Id.* Instead, Plaintiffs' counsel asked if there would be any problem adding the term. *Id.* Plaintiffs' counsel did not ask to confirm a prior understanding but rather asked what defense counsel thought of a new term. Finally, Plaintiffs' counsel sent a revised draft of a motion for approval of the settlement to defense counsel on August 5, 2024. Def.'s Mot., Ex. G. The petition states that the parties agreed on or about July 2, 2024 on "a proposed settlement of Plaintiff's claims." Def.'s Mot., Ex. H. There is no mention of a mutual release of claims. *Id.*

Plaintiffs argued at the evidentiary hearing that the Court cannot find the parties agreed to a settlement because a settlement on behalf of a minor is subject to court approval. But the parties understood during negotiations that they would have to submit their agreement to a guardian ad litem and that any agreement was subject to this Court's approval. *See, e.g.,* Def.'s Mot., Exs. A, C, E. This Court's ruling does not allow the parties to bypass the requirements for approval of a settlement for personal injury of a minor. The parties are **DIRECTED** to file a petition for approval of the settlement.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: October 21, 2024

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE